578 S.E.2d 369

**STATE of West Virginia, Plaintiff
Below, Appellee**

v.

**Tony W. REDMAN, Defendant
Below, Appellant**

No. 30534.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2003.

Decided Feb. 27, 2003.

J.L. Hickok, Paul R. Stone, Public Defender Services, Charleston, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Kelley M. Goes, Assistant Attorney General, Charleston, for the Appellee.

PER CURIAM:

Appellant Tony W. Redman appeals from the August 3, 2001, order of the Circuit Court of Putnam County denying his motion for a reduction of sentence. In support of this appeal, Appellant argues that the ruling is deficient for failure to include findings of fact and conclusions of law. In addition, Appellant contends that the lower court failed to properly consider the issue of rehabilitation and that the court erred in calculating the length of his sentence. Upon our full review of these assignments of error against the record in this case, we find no error and accordingly, affirm.

## I. Factual and Procedural Background

On March 9, 1995, the Putnam County Grand Jury returned an indictment against Appellant charging him with five counts of daytime burglary and five counts of grand larceny. He entered into a plea agreement on March 31, 1995, whereby he plead guilty to three counts of daytime burglary and two counts of grand larceny. By order of June 9, 1995, Appellant was sentenced to three consecutive terms of not less than one nor more than fifteen years and two consecutive terms of not less than one nor more than ten years. The sentencing order was modified through entry of a separate order on August 28, 1997, which directed that the two one to ten-year terms were to run concurrently with one another "and not consecutively as previously ordered by this Court."

After serving four years of his sentence, Appellant was placed on probation on June 4, 1999. Based upon the commission of several acts in violation of the terms of Appellant's probation, the Probation Department moved for revocation of probation on November 5, 1999. While incarcerated at the South Central Regional Jail and awaiting resolution of the issue of probation revocation, Appellant was charged with violating a federal law—conspiracy to distribute controlled substances while in jail.[1]

Following two hearings on the issue of probation revocation,[2] the circuit court revoked Appellant's probation and reinstated his modified sentence of not less than four nor more than fifty-five years with credit for time served—1,950 days as of March 16, 2001, the date of the court's ruling. In deciding to revoke probation, the circuit court identified the specific term and condition of probation that directed Appellant not to use, sell, or distribute any controlled substances and to refrain from consuming intoxicating beverages. Citing Appellant's admission to using illegal controlled substances while on probation, the circuit court stated, as the basis for its rejection of continued probation:

The Court finds that Mr. Redman has not learned his lesson from his earlier period of incarceration. He continues to break the law by using these illegal controlled substances. The Court further finds that Mr. Redman is a detriment to society and that it is in the best interest of the public that he be kept out of society. The Court finds the defendant to be a public menace who should not be on probation.

On June 25, 2001, Appellant filed a motion for reconsideration of sentencing pursuant to Rule 35(b) of the Rules of Criminal Procedure. After hearing arguments on this issue at a hearing on July 23, 2001, the circuit court denied Appellant's request for relief by order entered on August 3, 2001. While the trial court, in denying the Rule 35(b) motion, did not delineate specific findings in support of its ruling, the court indicated that it was denying the motion "in that Counsel made the same argument and assigned the same reasons previously given at sentencing of the defendant."

On May 1, 2002, Appellant was paroled in connection with the burglary and larceny sentences imposed under state law. He is currently incarcerated in the federal system, serving an eighteen-month sentence for conspiracy to distribute Schedule IV controlled substances[3] that will be followed by three years of supervised release.

Appellant appeals from the lower court's refusal to alter its sentencing decision, specifically its decision to revoke probation.

## II. Standard of Review

■ We set forth the appropriate standard of review in syllabus point one of *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996):

In reviewing the findings of fact and conclusions of law of a circuit court concerning an order on a motion made under Rule 35 of the West Virginia Rules of

---

1. *See* 21 U.S.C. § 1846 (2000).

2. The original petition to revoke probation was amended to include Appellant's commission of the federal drug offense while incarcerated in the regional jail.

3. Appellant entered a plea of guilt to the federal drug charge on October 5, 2000.

Criminal Procedure, we apply a three-pronged standard of review. We review the decision on the Rule 35 motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.

Accordingly, we proceed to review the lower court's decision to deny Appellant's motion for sentencing relief under this combined standard of review.

## III. Discussion

### A. Lack of Factual Findings and Legal Conclusions

■ As his primary assignment of error, Appellant challenges the lack of specific findings of fact and conclusions of law. Appellant acknowledges that Rule 35 does not explicitly require findings of fact and conclusions of law,[4] but he suggests that our decisions imply such a requirement.[5] To be clear, rulings issued by trial courts, as a rule, must contain the requisite findings of fact and conclusions of law "to permit meaningful appellate review." Syl. Pt. 3, in part, *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997).[6] "Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." *Id.* at 350, 484 S.E.2d at 233.

While Appellant initially complains about the lack of specific factual findings, he quickly acknowledges that the "facts of this case

are ... essentially uncontested." Rather than a lack of detailed factual findings, the crux of Appellant's complaint with the ruling in this case is the trial court's statement to Appellant in the course of the July 23, 2002, hearing that "[w]e're here to punish you, sir." Relying exclusively on this statement, Appellant argues that this utterance evidences the trial court's gross abuse of discretion in sentencing him. *See Head,* 198 W.Va. at 305–06, 480 S.E.2d at 515–16 (observing that "gross abuse of discretion" in addition to legal error can warrant reversal of trial court's Rule 35 ruling) (Cleckley, J., concurring).

■ When viewed, not in isolation, but in context of the full colloquy between the court, counsel, and Appellant, that statement does not suggest a court bent on punishment to the exclusion of all other considerations. The entire focus of the Rule 35 hearing was to convince the trial court that Appellant should be placed on probation with the concomitant objective of enabling him to have access to the more extensive drug treatment program available through the federal prison system.[7]

MR. STONE: ... [W]hat we're here for today is to ask you, ... to reinstate his probation.

THE COURT: And I gave you reasons for not [doing so]. I told you he violated the terms and conditions of his probation. And I gave you full—I gave your client a full hearing on the same. I gave

---

4. Section b of Rule 35 provides as follows:

(b) *Reduction of Sentence.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion within 120 days after the sentence is imposed or probation is revoked, or within 120 days after the entry of a mandate by the supreme court of appeals upon affirmance of a judgment of a conviction or probation revocation or the entry of an order by the supreme court of appeals dismissing or rejecting a petition for appeal of a judgment of a conviction or probation revocation. The court shall determine the motion within a reasonable time. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.

Crim.R.Pro.35(b).

5. The cases that Appellant cites for this supposition are the standard of review holding in syllabus point one of *State v. Head* and the habeas corpus decision of *State ex rel. Postelwaite v. Bechtold,* 158 W.Va. 479, 212 S.E.2d 69 (1975).

6. While the *Lilly* holding requiring findings of fact and conclusions of law was originally addressed at summary judgment rulings, it is similarly applicable to other rulings of a circuit court.

7. During the hearing, it was represented that the drug program available through the state penal system was a three-day maximum program, and, in contrast, the treatment program available through the federal system was an intense nine-month program.

him factual reasons why I felt it was inappropriate, did I not?

. . .

MR. STONE: We're asking you . . . under this motion that we timely filed to reinstate the probation that you previously revoked. That's the reason -

THE COURT: I will not for the same reasons I advised earlier. Your client, he violated the terms and conditions of his parole—excuse me—probation. He admitted to it, is that not correct, Mr. Stone?

MR. STONE: That is true with respect to that.

. . .

THE COURT: Mr. Smith and Mr. Stone make great strides to attempt to advise the Court that this person needs drug counseling, et cetera. But I have to look at it from society's point of view. He was charged with ten felonies, pled to five. They [his sentences] were reduced, [he was] given probation and then he goes out and breaks it. . . . [H]e used these drugs at a time when he knew he shouldn't, therefore, the Court did reinstate the sentences the Court earlier imposed upon you. It didn't do so out of lack of compassion, it did so to punish. That's exactly why this Court today is going to reaffirm the denial of him being placed on probation.

We're here to punish you, sir. You were given a substantial, for lack of a better term, break at the onset. You only had to pled [sic] to five through a plea agreement with the state. They were reduced. You were then given probation, terms and conditions which you violated. Not just one. There's evidence here you violated others. . . .

The Court is upholding its earlier ruling, finding that you, sir, violated the terms and conditions of your probation. And for the same reasons, which I shall incorporate hereby [by] . . . reference, I reinstate—I denied and reinstated the original sentences. Today I'm going to affirm that.

Through its ruling from the bench at the July 23, 2001, hearing the trial court incorporated by reference its rulings set forth in its March 16, 2001, order wherein the circuit court ruled on the amended petition for revocation of probation.[8] In that ruling, the trial court expressly identified its bases for denying probation:

The Court further finds that the defendant should not be placed on probation for the following reasons:

That the defendant was originally charged with ten (10) felonies which the defendant through a plea agreement plead down to five (felonies); that the defendant had previously been found to have violated the terms of his probation; that the Court had previously reduced his sentence and placed him on probation, after it believed that the defendant had learned his lesson. However, by his own admission, Mr. Redman used illegal controlled substances once he was on probation. This was a violation of the terms and conditions of his probation.

The Court finds that Mr. Redman has not learned his lesson from his earlier period of incarceration. He continues to break the law by using these illegal controlled substances. The Court further finds Mr. Redman is a detriment to society and that it is in the best interest of the public that he be kept out of society. The Court finds the defendant to be a public menace who should not be on probation.

■ Because nothing new had transpired in the period following the trial court's ruling on the probation revocation petition, it stands to reason that there would be no additional findings of fact or legal rulings required, other than the granting or denial of the Rule 35 motion itself. *See* Syl. Pt. 4, in part, *Head*, 198 W.Va. at 299, 480 S.E.2d at 508 (holding that "[w]hen considering West Virginia Rules of Criminal Procedure 35(b) motions, circuit courts generally should consider only those events that occur within the 120–day filing period"). In making its ruling of August 3, 2001, denying the Rule 35(b) motion, the trial court recognized that Appel-

8.  *See supra* note 2.

lant's counsel had not introduced any new arguments or reasons regarding the issue of probation. Consequently, the trial court referenced the reasons previously given in its March 16, 2001, ruling in denying probation in the first instance. By clearly incorporating its earlier findings of fact and conclusions of law from the March 16, 2001, ruling and given the absence of any new evidence or even new legal arguments raised through the Rule 35 motion, the lower court was not in violation of this Court's holdings that require findings of fact and conclusions of law as a necessary prerequisite to appellate review.

■ Upon our review of the transcript from the hearings related to the sentencing issue, we do not find that the lower court abused its discretion. The trial court clearly reviewed Appellant's history of his actions while he was on probation in determining whether he was a good candidate for continued probation.[9] The court acted within its discretion in deciding that Appellant, based on his disregard for the terms and conditions of his probation and the law, should not remain on probation. We note that the issue of Appellant being placed on probation for purposes of gaining entry into a federal drug treatment program is now a moot issue, as Appellant was paroled from the state system during the pendency of this appeal and is now incarcerated in the federal system and presumably undergoing drug treatment. We nonetheless address the additional issues raised through this appeal.

### B. Rehabilitation

■ As a corollary to the first assignment of error, Appellant argues that the trial court failed to properly consider the issue of rehabilitation in making its ruling on the Rule 35 motion. Appellant relies upon this Court's holding in syllabus point two of *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981) that "[i]nmates incarcerated in West Virginia

state prisons have a right to rehabilitation established by W.Va.Code §§ 62–13–1 and 62–13–4 (Cum.Supp.1980), and enforceable through the substantive due process mandate of article 3, section 10 of the West Virginia Constitution." While acknowledging that the Legislature repealed West Virginia Code § 62–13–1 effective April 30, 2000, Appellant maintains that the "right of rehabilitation and the administrative mandate for a program of education and treatment is contained in [West Virginia Code] § 62–13–4." [10]

■ In a clear attempt to elevate the lower court's ruling to an issue of constitutional significance, Appellant argues that the transcript from the July 23, 2001, hearing demonstrates that the trial court failed to consider the issue of rehabilitation and only concerned itself with the need for punishment. In effect, Appellant criticizes the lower court for its decision to keep him in the state system with its limited drug treatment program as opposed to placing him on probation, which would have in turn expedited his participation in the federally administered drug treatment program. Just because an individual finds himself in the "fortuitous" situation of having committed a federal offense, while still serving time for the commission of a state offense, there is nothing in the enactments of this state that would require a trial court to disregard the remainder of his sentence to accelerate his participation in a federal drug program.

■ Appellant suggests that the trial court's rejection of probation in this case is the equivalent of a denial of rehabilitation efforts. The law does not go so far. Clearly, a trial judge needs to consider the issue of rehabilitation in making its sentencing decisions. But those decisions are not to be made in a vacuum separate from the relevant facts that weigh on this serious issue and its attendant consequences on the community at

9. During the July 23, 2002, hearing, Appellant's counsel, Tom Smith, indicated to the trial court that even if he was placed on probation Appellant would not be out on the streets due to the unserved but pending federal sentence.

10. West Virginia Code § 62–13–4, includes among its directives, in addressing the powers

and duties of the commissioner of corrections or the director of corrections management: "Supervise the treatment, custody and discipline of all inmates and the maintenance of the institutions and their industries[.]" W.Va.Code § 62–13–4(h).

large. To submit, as does Appellant, that the trial court utterly failed to consider rehabilitation and failed to explain why rehabilitation was not an option is to ignore the cumulative record in this case. In fact, the trial court considered the multitude of factors that courts are required to weigh when addressing the various sentencing options available to determine the appropriate sentence for a given defendant. The court considered the severity of the crimes at issue and the fact that Appellant had been permitted to plead to reduced charges; the fact that Appellant had been on probation and disregarded the terms and conditions of that probation; the fact that Appellant was aware of his drug problem and failed to avail himself of any private treatment options; and the fact that he could not be returned to the community with his current drug problem without the consequent consideration of additional crimes being committed based on his continuing drug use and addiction.[11]

As the State accurately observes, the "right to rehabilitation does not remove discretion from the court to consider an appropriate sentence for a convicted felon." Our system of criminal jurisprudence views a trial court's discretion during the sentencing phase of a criminal proceeding as a critical component of the process. *See Head*, 198 W.Va. at 306, 480 S.E.2d at 515 ("Circuit court judges have a right to believe that so long as they have not violated a law or acted in a nefariously discriminatory way in imposing sentences, this Court will not sift through the nooks and crannies of their decisions determined on finding that which is not there.") (Cleckley, J., concurring). This is why "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). Upon our review of the record of this matter, we find no abuse of discretion with the trial court's decision not to grant relief under Rule 35(b).

## C. Incorrect Sentence Computation

Appellant asserts that the lower court wrongly denied him the benefit of forty-two days of time served in calculating the length of his sentence upon its reinstatement. Because this matter was not raised below with the trial court, we do not address it here in the first instance. It has long been the rule that "[t]his Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. Pt. 2, *Sands v. Security Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958).

In addition, Appellant argues that the trial court misinterpreted the modification of his sentence through the August 28, 1997, ruling wherein the trial court decreed that his sentences for the two pleas of guilt to grand larceny were "to run concurrent and not consecutively as previously ordered by this Court." Rather than the four to fifty-five sentence that was imposed, Appellant asserts that it should be three to forty-five under his theory that with its modification order, the trial court intended that the grand larceny charges should run concurrent with the daytime burglary charges. Appellant failed to raise this issue of sentencing below when making his Rule 35(b) motion and similarly did not raise it during the hearing on the motion. Accordingly, we decline under *Sands* to address this issue here in the first instance. 143 W.Va. at 522, 102 S.E.2d at 734, syl. pt. 2.

Based on the foregoing, the decision of the Circuit Court of Putnam County is hereby affirmed.

Affirmed.

---

11. In concluding that Appellant was a menace to society, the trial court was presumably referencing the fact that he was not ready to be returned to the community due to the possibility of committing additional drug-related crimes.